UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA ORTIZ GONZALEZ,

       Plaintiff,

v.

                                CASE No. 8:12-CV-674-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

       The plaintiff in this case seeks judicial review of the denial of her claim for Social Security disability benefits.[2] Because the law judge does not adequately evaluate mental impairment evidence from treating sources which contradict the law judge's finding that the plaintiff's mental impairments are non-severe, the decision will be reversed and the matter remanded for further consideration.

---

       [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

       [2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

I.

The plaintiff, who was thirty-seven years old at the time of the administrative hearing and who has completed high school (Tr. 27, 151), has worked as a department sales manager, salesperson, and eligibility analyst (Tr. 152). She filed a claim for Social Security disability benefits, alleging that she became disabled due to depression, anxiety, arthropathy of the spine, herniated disc, arthritis, degenerative disc disease, spondylosis, and Sjogren's disease (Tr. 150). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease, spondylsis, obesity and Sjogren's syndrome (Tr. 12). The law judge found further that, although the plaintiff has medically determinable impairments of depression and anxiety, they do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and, therefore, are non-severe (Tr. 14-15). He concluded that the plaintiff (Tr. 15-16):

> retains the residual functional capacity to perform a wide range of light work. The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and/or walk for a total of 6 hours in an 8-hour workday. She can

> frequently climb, balance, stoop, kneel, crouch or
> crawl. She has no manipulative, visual,
> communicative or environmental limitations. She
> can hear, understand, remember and carry out
> simple routine and complex work instructions, and
> can interact appropriately with co-workers,
> supervisors and the general public.

The law judge ruled that, with these limitations, the plaintiff was unable to

perform past work (Tr. 17). However, based upon the plaintiff's residual

functional capacity, her age, education and work experience, the law judge

concluded that the medical-vocational guidelines indicated that there were

jobs in significant numbers in the national economy that the plaintiff could

perform (Tr. 17, 18). Accordingly, the law judge decided that the plaintiff

was not disabled (Tr. 18). The Appeals Council let the decision of the law

judge stand as the final decision of the Commissioner.

## II.

A. In order to be entitled to Social Security disability benefits,

a claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

. . . has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. 423(d)(1)(A). A "physical or mental

impairment," under the terms of the Act, is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The law judge decided the plaintiff's claim under regulations designed to incorporate vocational factors into the determination of disability claims. Those regulations apply in cases where an individual's medical condition is severe enough to prevent her from returning to her former employment, but may not be severe enough to prevent her from engaging in other substantial gainful activity. In such cases, the regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2. If

an individual's situation coincides with the criteria listed in a rule, that rule
directs a conclusion as to whether the individual is disabled.   20 C.F.R.
404.1569. If an individual's situation varies from the criteria listed in a rule,
the rule is not conclusive as to an individual's disability, but is advisory only.
Id.

III.

The plaintiff's two interrelated challenges to the law judge's
determination concern her mental impairments. The law judge concluded that
the plaintiff suffers from depression and anxiety, but that these impairments
do not cause more than minimal limitation in the claimant's ability to perform
basic mental work activities and, therefore, are non-severe (Tr. 14-15).   The
plaintiff argues that, in making this determination, the law judge improperly
relied upon the opinion of a nonexamining reviewing psychologist over the
opinions of her treating doctor, Dr. Kay Hardee, and psychiatrist Dr. Charles
DeVine (Doc. 20).

The plaintiff's second contention is that the law judge erred in
relying upon the guidelines, rather than a vocational expert, in finding the
plaintiff not disabled.   The plaintiff acknowledges that this contention
depends upon the success of her first argument (Doc. 20, p. 9).  Thus, the law

judge could not rely upon the guidelines if the plaintiff had significant mental functional limitations. <u>Francis</u> v. <u>Heckler</u>, 749 F.2d 1562, 1566 (11th Cir. 1985).

The law judge did not adequately explain why the opinions of Dr. Hardee and Dr. DeVine do not compel a finding of a significant mental impairment. Consequently, the law judge could not rely upon the guidelines in finding that the plaintiff was not disabled.

Dr. Hardee opined in a Treating/Examining Source Statement of Mental Capacity dated July 18, 2011, that the plaintiff suffers from depression and anxiety (panic attacks) (Tr. 510). Dr. Hardee opined that, due to the plaintiff's mental impairments, the plaintiff "has trouble keeping focus," would be unable to complete a normal workday without interruptions four times a month or more, and would be unable to perform or maintain regular attendance more than four days per month (<u>id</u>.). The law judge said he gave Dr. Hardee's opinion "little weight" (Tr. 14). In fact, it appears he gave it no weight.

Dr. DeVine, the plaintiff's psychiatrist, conducted a psychiatric evaluation of the plaintiff on July 14, 2011 (see Tr. 507-08).[3]   Dr. DeVine opined that the plaintiff suffered from "Major Depressive Disorder, recurrent, severe without psychotic features" and "Panic Disorder without agoraphobia" (Tr. 508).  He prescribed two medications and psychotherapy (id.).  Dr. DeVine opined pertinently that the plaintiff's "[c]oncentration and attention are poor," and assessed the plaintiff as having a GAF (Global Assessment of Functioning) score of 45 (id.).  The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."   Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.  A GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Id.

The law judge noted in the decision Dr. DeVine's diagnoses, but did not acknowledge Dr. DeVine's opinion that the plaintiff's

---

[3]The pertinent opinion from Dr. DeVine was formed during his first evaluation of the plaintiff (Tr. 507-08)  Therefore, contrary to the plaintiff's contention, his opinion would not be entitled to the weight accorded the opinion of a treating physician. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004)(one-time examiner is not a treating physician).

"[c]oncentration and attention are poor," or the GAF score of 45 (see Tr. 14). Rather, the law judge asserted that Dr. DeVine "did not offer an opinion regarding the claimant's mental functional limitations" (id.). Instead, the law judge gave "[g]reat weight" to the opinion of nonexamining reviewing psychological consultant Jane Cormier in finding that the plaintiff's mental impairments of depression and anxiety were non-severe (Tr. 14-15).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Furthermore, "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician." Broughton v. Heckler, 776 F.2d 960, 962(11th Cir. 1985); see also Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 873 (11th Cir. 2011)("The opinion of a non-examining physician is ... entitled to little weight when it contradicts the opinion of an examining physician"); 20 C.F.R. 404.1527(c)(1)("Generally, we give more

weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you").

The law judge stated good cause for discounting the opinion of Dr. Hardee that the plaintiff would be unable to complete a normal workday or to maintain a normal schedule four days or more per month. See Lewis v. Callahan, supra. Thus, the law judge explained that Dr. Hardee's opinion was given after only two appointments (and she therefore lacked a longitudinal history of the plaintiff's condition, which is a primary reason for attributing controlling weight to a treating physician), and the opinion is not supported by the evidence of record, including Dr. Hardee's treatment notes (Tr. 14).

On the other hand, the law judge's reasons do not explain why the opinion did not at least establish that the plaintiff had a severe, *i.e.*, a significant, mental impairment. The law judge speculated that Dr. Hardee may not be a psychologist (id.). Dr. Hardee represents that she has a Ph.D. degree; her notes reflect a psychological evaluation (Tr. 432-36); and the plaintiff was referred to Dr. Hardee by Dr. DeVine, because at the time Dr. DeVine was not taking on new patients. Under these circumstances, the law judge should have at least inquired into Dr. Hardee's qualifications before he speculated that she might not be a psychologist. Consequently, this reason

-10-

does not justify the law judge to disregard completely Dr. Hardee's indication that the plaintiff has a significant mental impairment.

Furthermore, it was not accurate to suggest that Dr. Hardee was not a treating source (Tr. 14). While the law judge could appropriately consider that the plaintiff did not have a substantial treating relationship with Dr. Hardee, I am aware of no authority, and the Commissioner has cited none, holding that a doctor or psychologist that has seen a patient just two times is not a treating source.

In addition, the law judge rejected Dr. Hardee's opinion because it was based on the plaintiff's subjective complaints (id.). However, that typically is what psychologists consider and evaluate. Moreover, in this case, the law judge did not make a meaningful credibility determination of the plaintiff's subjective complaints. Thus, there is no explanation why Dr. Hardee should not consider the plaintiff's reports of symptoms and limitations.

Consequently, Dr. Hardee's opinion corroborates the opinion by Dr. DeVine that the plaintiff has a severe mental impairment.

In all events, the plaintiff argues meritoriously that the law judge did not give an adequate explanation for disregarding the opinion of Dr.

DeVine (Doc. 20, p. 7). As indicated, the law judge dismissed Dr. DeVine's evaluation because it purportedly "did not offer an opinion regarding the claimant's mental functional limitations" (Tr. 14). However, Dr. DeVine specified in the evaluation that the plaintiff's "[c]oncentration and attention were poor" (Tr. 508). Thus, Dr. DeVine clearly opined that the plaintiff had a significant deficit in one of the four recognized areas of mental functioning that would affect her ability to work. See 20 C.F.R. 404.1520a(c)(3). Furthermore, Dr. DeVine assessed the plaintiff as having a GAF score of 45 (Tr. 508). Although not dispositive of disability, this low GAF score indicates severely impaired mental functioning, especially when considered in conjunction with Dr. DeVine's opinion that the plaintiff's "[c]oncentration and attention were poor" and his notation of the plaintiff's social isolation (id.).

Significantly, if the law judge accepted Dr. DeVine's assessment of a GAF score of 45 and his opinion that the plaintiff has a poor ability to concentrate and maintain attention, the law judge would have found that the plaintiff has a severe mental impairment. See Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)("[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."); 20 C.F.R. 404.1521(a)(a nonsevere impairment is one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities"). This, in turn, would have affected the plaintiff's residual functional capacity and, as the plaintiff points out (Doc. 20, pp. 8-9), would have required the testimony of a vocational expert to determine whether there was work that the plaintiff could perform in the economy. Francis v. Heckler, supra, 749 F.2d at 1566 ("[e]xclusive reliance on the grids is not  appropriate" when the plaintiff "has non-exertional impairments that significantly limit basic work skills"); Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989)(use of the grids when a claimant had nonexertional limitations concerning performing complex tasks and tolerating extraordinary stress is error). Therefore, it cannot be stated that the failure to evaluate Dr. DeVine's assessment was harmless error. See McCloud v. Barnhart, 166 Fed. Appx. 410, 418 (11th Cir. 2006). Of course, on remand, the Commissioner may discount Dr. DeVine's assessment, provided he states a reasonable basis for doing so.

The Commissioner, suggesting, strangely, that Dr. DeVine's GAF scores support the law judge's decision, points out that a month later Dr.

DeVine assessed the plaintiff with a GAF score of 55 (Doc. 21, p. 8). That score, however, reflects a moderate mental limitation and would indicate a severe mental impairment.

Notably, consultative psychologist Dr. Timothy Foster opined that the plaintiff "appears to have some limits in social and in concentration," and even expressed doubt whether the plaintiff was employable (see Tr. 317) (quotations added) (The plaintiff "could, 'perhaps,' still function adequately ... in a less stressful work situation."). The law judge did not acknowledge these aspects of Dr. Foster's opinion, or specify the weight given to Dr. Foster's opinion (see Tr. 13).

Moreover, Dr. Foster and consultative psychologist Nekeshia Hammond each assessed the plaintiff as having a GAF score of 60 (Tr. 318, 396). Although not as severe as Dr. DeVine's assessment, a GAF score of 60 is consistent with moderate functional limitations and, therefore, is further evidence indicating the presence of a severe mental impairment. The law judge, however, also failed to mention these GAF scores (see Tr. 13) and, therefore, certainly did not evaluate them.

Instead, as indicated, the law judge relied upon a nonexamining reviewer's opinion to find that the plaintiff's mental impairments were not

-14-

severe. However, the law judge failed to give a cogent explanation why he was accepting the opinion of a nonexamining reviewer over the contrary opinion of examining and treating sources. See Jarrett v. Commissioner of Social Security, supra, 422 Fed. Appx. at 873 ("The opinion of a non-examining physician is ... entitled to little weight when it contradicts the opinion of an examining physician."). Further, as the plaintiff notes (see Doc. 20, pp. 6-7), reviewing psychologist Dr. Cormier's opinion was based upon an incomplete record. Thus, Dr. Cormier did not have the benefit of the records from Dr. Hardee and Dr. DeVine when she opined that the plaintiff's mental impairments were not severe. Although the law judge asserts in a conclusory manner that this additional evidence "has not rendered Dr. Cormier's assessment invalid or obsolete" (Tr. 14), that finding is not adequately explained. In sum, the law judge failed to evaluate significant impairment evidence from examining doctors which is contrary to the law judge's finding that the plaintiff's mental impairments are not severe.

The Commissioner, in his response, argues that the law judge was not obligated to evaluate a GAF score or, alternatively, the failure to do so was harmless error (Doc. 21). Thus, the Commissioner attempts to dismiss the GAF evidence, stating that the Commissioner has "declined to endorse

using the GAF scale in the disability programs because it does not have a direct correlation to the severity requirements in our mental disorders listings'" (id., p. 9, quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (2000)). The GAF evidence in this case, however, is not to be used in connection with the listings of mental disorders (which is step three of the Commissioner's sequential analysis), but in connection with the determination of the severity of the plaintiff's mental impairments and her residual functional capacity. Decisions such as McCloud v. Barnhart, supra, show that a GAF score can be relevant evidence in cases like this.

The Commissioner argues further that the law judge's failure to consider Dr. DeVine's GAF score "does not undermine the ALJ's decision" because "the score does not indicate that Plaintiff's mental impairments [are] significantly limit[ing], or have any other effect on, her ability to work" (Doc. 21, p. 9; see also id. at p. 13). However, if the law judge accepted the GAF score of 45 opined by Dr. DeVine, or even the GAF score of 60 opined by Drs. Foster and Hammond, that should have changed the law judge's conclusion that the plaintiff's mental impairments were non-severe, especially in light of other corroborating evidence of impairments in concentration.

Moreover, the Commissioner contends that there is ample evidence supporting the law judge's finding that the plaintiff had only mild mental limitations and, in particular, identifies evidence that could support a finding of mild limitations in concentration, persistence or pace (id., pp. 5-8). However, the arguments set forth by the Commissioner's lawyers for discounting Dr. DeVine's opinion cannot support the administrative decision because post-hoc rationalizations by litigating counsel for an agency do not provide the proper basis for judicial review. Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 50 (1983); Dempsey v. Commissioner of Social Security, 454 Fed. Appx. 729, 733 (11th Cir. 2011); Baker v. Commissioner of Social Security, 384 Fed. Appx. 893, 896 (11th Cir. 2010).[4] This principle is especially apt in this circumstance, where the law judge does not even acknowledge this impairment evidence in his decision. In sum, the Commissioner's arguments that the failure to evaluate Dr. DeVine's opinion is, at most, harmless error, are unpersuasive.

---

[4]In this connection, it is noted that much of the evidence cited by the Commissioner in his opposition memorandum was not mentioned in the law judge's decision. For example, the Commissioner discusses in detail the mental evaluation of neurologist Dr. Donna Saatman; however, the law judge did not even cite to the neurologist's findings with regard to the plaintiff's mental capabilities (see Tr. 13).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby REVERSED, and the matter is REMANDED to the Commissioner for further consideration. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 23rd day of May, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE